**Ray Eugene LANE, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–85–247–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 31, 1989.

Law Offices of Rickard & Ware, Logan Ware, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., C. Chris Marshall, Delonia Watson, and Robert Huttash, Assts. Crim. Dist. Attys., Fort Worth, for appellee.

Before WEAVER, C.J., and JOE SPURLOCK, II and HILL, JJ.

## OPINION ON REMAND

WEAVER, Chief Justice.

Appellant was convicted of robbery pursuant to TEX.PENAL CODE ANN. sec. 29.02(a)(1) (Vernon 1989), enhanced by two prior convictions, and was sentenced to thirty years confinement in the Texas Department of Corrections. On appeal, this court reversed upon the grounds of insufficient evidence and remanded to the trial court for a judgment of acquittal. *Lane v. State,* 713 S.W.2d 223 (Tex.App.—Fort Worth 1986). Upon the State's petition for discretionary review, our judgment was reversed and the cause remanded for our consideration of appellant's remaining points of error. *Lane v. State,* 763 S.W.2d 785 (Tex.Crim.App.1989).

These points are based upon claims of improper limitation of questions propounded to a juror on voir dire and improper jury argument by a prosecutor. We will ad-dress the latter claim first under point of error number three.

The record shows the following during the jury argument:

MR. GALLAGHER [Prosecutor]: ... It doesn't have to be that the Defendant intended to hurt Kathy Lane (sic), it would just have to show—

MR. KREDELL [Defense Counsel]: Your Honor, I would have to object at this point, that the Charge states intentional or knowing caused—intentionally or knowingly caused bodily injury.

THE COURT: Well, Counsel, this is argument and I'm going to overrule your objection....

Appellant contends that the argument misinformed the jury regarding the elements of proof as contained in the court's charge, citing *Cook v. State,* 540 S.W.2d 708 (Tex. Crim.App.1976) to the effect that counsel's statement of what purports to be the law when same is not contained in the court's charge is improper, and the error is compounded by an incorrect statement of the law. *Id.* at 710. Such is not the case here. We observe that appellant's objection, stated above, recognizes that the bodily injury could have been proven as being caused either intentionally or knowingly. In its charge, the court defined "intentionally" and "knowingly" and authorized the jury to convict upon a finding of bodily injury caused in either of the culpable mental states. We hold the prosecutor's argument did not misinform the jury regarding the requisite proof of an element of the offense. Point of error number three is overruled.

Appellant's two points of error regarding the restriction of his jury voir dire arise out of the following exchanges:

MR. KREDELL [Defense Attorney]: Okay. Mr. Yeatts, you've heard a lot of us talking about reasonable doubt. The Judge talked about it briefly, the Prosecutor talked about it, and I just touched on it, but let me ask you personally, when we talk about that concept—and that is a legal concept in this criminal trial—*what does that mean to you, rea-*

*sonable doubt?* [Emphasis added—challenged in point of error two.]

MR. GALLAGHER [State's Attorney]: Your Honor, we're going to object. That's improper voir dire, asking the jurors their individual concept of reasonable doubt.

THE COURT: Counsel, what is the reason for the individual—can you ask it in a general question?

MR. KREDELL: Judge, just wanting to discuss one of the legal concepts or principles that exist in this trial, and wanting to get a little bit more than a yes or no answer from the juror. No other ulterior motive.

MR. WISCH: The question at form seems to commit the individual juror to—

THE COURT: Uh-huh.

MR. WISCH: —a definition of a legal concept, which is not definable, and that seems like committing to one side of an issue prior to hearing the evidence and deciding as a jury.

THE COURT: Yeah. I'm not going to define reasonable doubt to the jury, Counsel, so I'm going to sustain the State's objection. You might—

MR. KREDELL: I understand.

THE COURT: —be a little less specific about it.

MR. KREDELL: Okay. The Prosecutor had, I think, given or offered a definition to them, but I'll rephrase that question, Judge.

THE COURT: I think he said that—he did say it was a—what did you say, George? You said—

MR. GALLAGHER: Your Honor, as I recall, I believe I said—I suggested it's just a doubt based upon reason, or—

THE COURT: Yeah. Or that you wasn't asking them to—not any doubt, and then you went into the witness—the offense—

MR. GALLAGHER: Yes, sir.

THE COURT: —with them.

MR. GALLAGHER: Yes, sir.

MR. WISCH: We certainly have no objection to Counsel—

THE COURT: Yeah.

MR. WISCH: —for Defense submitting his supposition of what a reasonable doubt is. But asking an individual juror is....

THE COURT: Yeah, go ahead and do that, Counsel, and then you can ask them a general question on it. Or you might ask a specific individual question, if you won't try to tie them down.

MR. KREDELL: Okay. Mr.—is it Yeetts (phonics)?

VENIREMAN YEATTS: Yeatts.

MR. KREDELL: Mr. Yeatts, let me ask it this way then. If—*if you thought a defendant—now, I'm talking about a—just an abstraction—not this case, but in any criminal case, if you thought a defendant was probably guilty of the crime charged, would you find him guilty? I'm not talking about this case.* [Emphasis added—challenged in point of error one.]

MR. GALLAGHER: Judge, again we're going to have to object. The question, as phrased, ties the juror down to a specific answer.

THE COURT: Yeah. I'll sustain it, Counsel.

In urging that it was error to sustain the objections to his questions to juror Yeatts, appellant cites *Powell v. State,* 631 S.W.2d 169 (Tex.Crim.App. [Panel Op.] 1982). In *Powell,* the court relied on, and quoted from, its previous opinion in *Mathis v. State,* 576 S.W.2d 835, 836–37 (Tex.Crim. App.1979), and stated the following:

"The right to be represented by counsel, guaranteed by Article 1, Section 10 of the Texas Constitution, encompasses the right of counsel to question the members of the jury panel in order to intelligently exercise his peremptory challenges. (citations omitted) The trial court, in its sound discretion, can and should control the voir dire examination of the venire; however, the permissible areas of questioning the panel in order to exercise peremptory challenges are broad and cannot be unnecessarily limited. (citations omitted)

"... When the contention is that the trial court erred in denying a challenge for

cause, no reversible error is shown unless the defendant exhausted his peremptory challenges and one or more objectionable juror sat on the jury. However, when the question is asked for the purpose of exercising peremptory challenges, the test for injury is entirely different. If the question is proper, an answer denied prevents intelligent use of the peremptory challenge and harm is shown. (citation omitted) As was stated in *Mathis v. State* (167 Tex.Cr.R. 627, 322 S.W.2d 629 (1969)), '... it is immaterial how the jurors would have answered the question, for, whatever their answers, the appellant was entitled to know their answers in order to enable him to exercise his peremptory challenges.' "

*Powell*, 631 S.W.2d at 170. In reversing Powell's conviction, the court noted that he had pled guilty and the only issue before the jury was punishment, where the jury was free to exercise its discretion without guidance from the court. *Id.* Under those circumstances, the consensus reached would be based upon the personal views of the individual jurors and the appellant was entitled to ask a question concerning the punishment philosophies of the jurors in order to intelligently exercise his peremptory challenges.

■ The State admits that in reviewing the decision to restrict voir dire, the appellate court is required to determine if the question is improper, because if the question is a proper one, then the denial of the right to ask it prevents the use of the peremptory challenges and harm is shown, but urges the question posed to Yeatts as to the meaning of reasonable doubt was improper as constituting a "global fishing expedition" such as the question proscribed in *Smith v. State*, 703 S.W.2d 641, 645 (Tex.Crim.App.1985). We find, however, the matter is more directly addressed in *Dickerson v. State*, 740 S.W.2d 567, 571–72 (Tex.App.—Fort Worth 1987, pet. ref'd), following *Battie v. State*, 551 S.W.2d 401, 405 (Tex.Crim.App.1977), *cert. denied*, 434 U.S. 1041, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978). In *Dickerson*, this court considered the right to question jurors regarding where they would place "reasonable doubt"

on a percentage scale, and held the question to be improper, (*Dickerson*, 740 S.W.2d at 571), following the *Battie* decision in which it was stated as follows:

"... Voir dire examination can become the lengthiest part of the proceeding.... To curb some prolixity, it is recognized that courts need have a discretionary area within which the examination might be reasonably limited." [*Smith v. State*, 513 S.W.2d 823, 827 (Tex.Crim.App.1974).]

It takes no stretch of the imagination to recognize that voir dire examination could be endless if counsel were allowed to ask each prospective juror questions relative to his understanding of such words and terms as "reasonable doubt," "criminal acts of violence," and "sound memory and discretion" which have been found to be "words simple in themselves" that "jurors are supposed to know such common meaning."

We conclude that the trial court did not abuse its discretion in denying appellant's request to ask prospective jurors questions about their understanding of the term "criminal acts of violence."

*Battie*, 551 S.W.2d at 405. Point of error two is overruled.

■ Appellant's point of error one is directed at the court's action after counsel rephrased his original question regarding reasonable doubt to inquire if the juror would find a defendant guilty if he "thought a defendant was probably guilty of the crime charged." We find the alternative question to be simply a subsidiary variation of the original question and hold it to be improper for the same reasons upon which we overruled point of error two. Point of error one is overruled.

The judgment is affirmed.