COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-124-CR
 
STEVEN WAYNE
POLK                                                                        
APPELLANT
V.
THE STATE OF
TEXAS                                                                            
STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
------------
MEMORANDUM
OPINION(1)
------------
Appellant Steven Wayne Polk appeals
his conviction for aggravated robbery with a deadly weapon. In his sole point,
he complains that the trial court erred by overruling his objection to the
prosecutor's improper jury argument. We affirm.
 
Factual Background
On June 19, 2001, Quenton Smith,
James Ranier, and Jonah Ward were working at and closing an area U-Haul store.
Appellant, wearing a mask and carrying a revolver, entered the store and
demanded the money from the cash register and the safe, including the money
hidden under the cash drawer of each register. He then took the personal
belongings of the men, which included a cell phone, a watch, and their wallets.
While leaving the store, appellant
approached William Pena, who had arrived to clean the store's floors. Appellant,
still holding the revolver, told Pena to get inside and then took his wallet.
Once appellant left, Pena waited a few minutes before going inside the store to
see if anybody was hurt and to call 911.
After the police arrived, Pena
described the suspect and the green van that appellant was driving. Officer
Michael Williams was on patrol that evening for the Fort Worth Police
Department. He heard a broadcast over his radio concerning the robbery,
including the description of the suspect and the van. As Officer Williams headed
towards his beat area, he noticed a small green van that matched the description
of the vehicle given on the broadcast. Officer Williams made eye contact with
the passenger of the van, and the passenger immediately looked away in a
suspicious manner. Officer Williams then tried to get more information about the
van to determine if it was the one involved in the robbery. The dispatcher told
him that the van involved in the robbery was a green Ford Astro. The van he was
following matched this description. Officer Williams then initiated a stop.
Appellant was the passenger in the
van. When Officer Williams asked for identification, he noticed that appellant's
pants pockets contained more than one wallet. Officer Williams looked through
two wallets before he found appellant's wallet with his identification.
After the police arrested
appellant, Officer Williams inspected the van and found a revolver in the
passenger seat. An inspection of the back of the van revealed a trash bag full
of money, wallets, and other assorted items.
On June 22, 2001, approximately two
days after the robbery, Detective Linda Weenig met with appellant. After
appellant signed a waiver, he told Detective Weenig what happened because
"he wanted to get it off his chest." He then put his statement in
writing.
Appellant pled not guilty to the
aggravated robbery charge, but the jury found appellant guilty. Appellant then
pled true to an enhancement paragraph in the indictment. The jury sentenced him
to fifty-five years' confinement.
Jury Argument
In his sole point, appellant
contends that the trial court erred by overruling his objection to the
prosecutor's improper jury argument. Specifically, he claims that the prosecutor
improperly argued that a lack of reasonable suspicion on Officer Williams's part
for the initial stop of the van would not affect the jury's ability to consider
his confession. Appellant argues that the "poisonous tree" theory
applies. The State responds that the argument was proper, and even if it was
improper, any error is harmless because appellant's substantial rights were not
affected.
To be permissible, the State's jury
argument must fall within one of the following four general areas: (1) summation
of the evidence; (2) reasonable deduction from the evidence; (3) answer to
argument of opposing counsel; or (4) plea for law enforcement. Felder v.
State, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), cert. denied,
510 U.S. 829 (1993); Alejandro v. State, 493 S.W.2d 230, 231 (Tex.
Crim. App. 1973).
If a jury argument exceeds the
bounds of proper argument, the trial court's erroneous overruling of a
defendant's objection cannot be reversible error unless, in light of the record
as a whole, the argument had a substantial and injurious effect or influence on
the jury's verdict. Tex. R. App. P. 44.2(b); Martinez v. State, 17
S.W.3d 677, 692-93 (Tex. Crim. App. 2000); Mosley v. State, 983 S.W.2d
249, 259 (Tex. Crim. App. 1998) (op. on reh'g), cert. denied, 526 U.S.
1070 (1999).
It is improper to argue contrary to
the law contained in the jury charge; however, merely going beyond the language
of the charge is not erroneous. State v. Renteria, 977 S.W.2d 606, 608
(Tex. Crim. App. 1998). Furthermore, the law is well-settled that a party does
not improperly argue during jury argument by making arguments based on legal
principles not contained in the court's charge. Id.; Middlebrook
v.State, 803 S.W.2d 355, 360-61 (Tex. App.--Fort Worth 1991, pet. ref'd); Gillis
v. State, 694 S.W.2d 245, 251 (Tex. App.--Fort Worth 1985, pet. ref'd).
"[T]here is no error in correctly arguing the law, even if the law is not
included in the court's charge." Renteria, 977 S.W.2d at 608.
During closing argument, the State
made the following argument concerning appellant's confession:

 [Detective Weenig] went and
 talked to him and let him put it in his own words. She didn't get it in the
 heat of the moment, she let him wait and think. She went in there and in his
 own words and in his own time let him put it down. What they're challenging
 doesn't affect this--"

Counsel then objected based on the
poisonous tree doctrine.
 
Appellant argues that when one is
confronted with an illegal detention that leads to a search or arrest and a
confession therefrom, the confession is treated as part of the tainted search
and arrest and should not be considered as evidence. See Brown v. Illinois,
422 U.S. 590, 603-04, 95 S. Ct. 2254, 2261-62 (1975); Guardiola v. State,
20 S.W.3d 216, 226 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd).
However, courts have also held that an otherwise valid confession following a
detention that is illegal as a matter of state law will not be excludable where
it is determined that the taint of the illegality has dissipated by the time the
confession was taken. Comer v. State, 776 S.W.2d 191, 196 (Tex. Crim.
App. 1989); Bell v. State, 724 S.W.2d 780, 787 (Tex. Crim. App. 1986), cert.
denied, 479 U.S. 1046 (1987); see also Brown, 422 U.S. at 605, 95
S. Ct. at 2262 (holding that when sufficient attenuating circumstances have
occurred between the allegedly unconstitutional seizure and the making of a
custodial statement, the statement cannot be said to be a product of illegal
arrest and is admissible in evidence).
The attenuation of taint analysis
has been held to require a four-part inquiry: "(1) whether Miranda
warnings were given, (2) the temporal proximity of the arrest and the
confession, (3) the presence of intervening circumstances, and (4) the purpose
and flagrancy of the official misconduct." Dowthitt v. State, 931
S.W.2d 244, 261 (Tex. Crim. App. 1996). The purpose of this four-part analysis
is to determine whether the causal chain between an illegal detention or arrest
and the statement at issue has been broken so that the statements are shown to
be the product of free will. Bell, 724 S.W.2d at 788.
After applying the four-part test,
we conclude that the taint of any possible illegality had dissipated by the time
the confession was taken, thus the State's jury argument was not improper.
First, Detective Weenig read appellant his Miranda rights, and asked
him if he understood his rights, and then appellant signed a statement that he
did in fact understand his rights. This factor weighs in favor of the State. The
second factor, temporal proximity of the arrest and the confession, also weighs
in favor of the State. Here, Detective Weenig did not conduct her interview with
appellant until approximately two days after his arrest. Contra id.
(holding that confession obtained in close temporal proximity, within one and a
half to three hours of defendant's arrest, weighed in favor of defendant); Vicioso
v. State, 54 S.W.3d 104, 112 (Tex. App.--Waco 2001, pet. ref'd) (holding
that three hours elapsing between arrest and defendant giving his written
statement weighed in favor of defendant).
There is no evidence in the record
that there were any intervening circumstances. Appellant stated that he wanted
to talk and "get it off his chest." Detective Weenig did not threaten
or physically strike appellant. Appellant appeared to be in his right frame of
mind and was not under the influence of alcohol. When appellant provided his
written statement, Detective Weenig let him write as much as he wanted, she did
not edit or add anything, and she did not tell him what to write. Accordingly,
this factor also weighs in favor of the State.
Finally, cases in which courts have
found the purpose and flagrancy of the official misconduct to weigh in favor of
a defendant are distinguishable from these facts. See Duncan v.
State, 639 S.W.2d 314, 318 (Tex. Crim. App. 1982) (defendant was roused
from bed at 3:00 a.m. for interrogation purposes, and was interrogated until
6:30 a.m., when she signed a written confession); Green v. State, 615
S.W.2d 700, 704 (Tex. Crim. App. [Panel Op.] 1980), cert. denied, 454
U.S. 952 (1981) (holding that defendant arrested in the middle of the night,
with officers rousing him from sleep, pointing shotguns in his direction, and
then leading him out into freezing weather with no coat, outer clothing, or
shoes). Here, Officer Williams followed a van that matched the description of
one that had just been involved in a robbery. He clarified that the description
was in fact a green Ford Astro van. After making eye contact with the passenger
and seeing the passenger suspiciously looking away, Officer Williams then
initiated a stop. His conduct was not in any way as extreme as that of the law
enforcement personnel involved in Green or Duncan. Thus, the
fourth factor weighs in favor of the State.
Having concluded that all four
factors weigh in favor of the State, we hold that the State's argument during
closing was proper, and the court properly overruled appellant's objection. See
Renteria, 977 S.W.2d at 608. The argument merely demonstrated how any taint
from the allegedly improper detention had been attenuated by the time appellant
provided his written confession. Appellant's sole point is overruled.
Conclusion
Having overruled appellant's sole
point, we affirm the trial court's judgment.
 
                                                           PER
CURIAM
 
PANEL F: LIVINGSTON, J.; CAYCE, C.J.;
and WALKER, J.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: May 15, 2003

1. See Tex. R. App. P. 47.4.